UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LISETTE G. PELLETIER, | ) |
| Plaintiff | ) ) ) |
| v. | ) 1:10-cv-00438-DBH ) |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) ) ) |
| Defendant | ) |

# AMENDED[1] REPORT AND RECOMMENDED DECISION

On remand from a prior district court ruling, the Social Security Administration found that Lisette G. Pelletier, a 53 year old woman with severe limitations in her upper extremities and cervical degenerative disk disease, retains the functional capacity to perform past relevant work, resulting in a denial of Pelletier's application for disability insurance benefits under Title II of the Social Security Act. In the prior decision remanded by this Court, the Commissioner found that Pelletier was no longer able to perform her past relevant work. Pelletier commenced this civil action to obtain judicial review of the final administrative decision. I recommend that the Court vacate the administrative decision and remand for further proceedings.

## The Prior Remand

On October 20, 2009, this Court accepted a recommended decision and vacated a prior administrative decision in which it was assessed that Pelletier was incapable of performing her past relevant work, but that she could transition to other work existing in substantial numbers. (Payment Docs. And Decisions, ECF Docket Item 9-10, Ex. 5A, R. 438-450.[2]) The remand

---

[1] This amendment corrects a typographical error on page one, second line under "The Prior Remand" where "accessed" is corrected to be assessed.
[2] The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 9.

order was based, primarily, on the Commissioner's failure to appropriately address Pelletier's marginal education and lack of competence in the English language in the course of his step 5 inquiry. (Id., R. 442-45, 448-49.) The recommended decision adopted by the Court called for a remand so that the Commissioner could make findings about Pelletier's actual educational profile and language ability and properly develop the vocational expert testimony concerning the impact of these factors on Pelletier's ability to transition to other work. (R. 445.) The ensuing remand order from the Appeals Council called "for further proceedings consistent with the order of the court" and instructed the Judge to "take any further action needed to complete the administrative record and issue a new decision." (Id., Ex. 6A, R. 454.) On remand, the Judge reevaluated the evidence associated with Pelletier's past relevant work, a step 4 issue that the Judge had previously decided in Pelletier's favor,[3] and he made neither inquiry nor finding concerning the step 5 vocational factors.

## The Current Administrative Findings

The Commissioner's final decision is the July 13, 2010, decision of Administrative Law Judge John L. Melanson. Judge Melanson's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. (Docs. Related to Admin. Process, ECF Docket Item 9-9, R. 9-15.)

At step 1 of the sequential evaluation process, the Judge found that Pelletier last met the insured status requirements of Title II on September 30, 2008, and has not engaged in substantial gainful activity since August 1, 2005, the date of alleged onset of disability. (Id., R. 375,

---

[3] In his prior decision, the Judge made the following step 4 finding:

> The claimant has past relevant work as a table worker. This work required her to handle objects frequently. Accordingly, the claimant was unable to perform past relevant work.

(Payment Docs. And Decisions, ECF Docket Item 9-10, Ex. 3A, R. 434, Finding 6.)

2

Findings 1 & 2.)

At step 2, the Judge found that Pelletier has the following severe physical impairments: bilateral carpal tunnel syndrome, right shoulder spurs, and right elbow tendonitis. (R. 375, Finding 3.)

At step 3, the Judge found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. (R. 376, Finding 4.)

Preliminary to further evaluation at steps 4 and 5, the Judge assessed Pelletier's residual functional capacity. The Judge found that Pelletier's combined impairments restrict her to light-exertion work, except that she must be able to alternate between sitting and standing every hour, cannot perform frequent handling with her right hand, and is limited to work that can be taught within a short period of demonstration. (R. 376, Finding 5.)

At step 4, the Judge found that this degree of limitation did not preclude past relevant work as a "hand packager" (Dictionary of Occupational Titles code 920.587-018). (R. 378, Finding 6.) This finding relied on vocational expert testimony, including testimony concerning apparent conflicts arising from the definition supplied in the Dictionary of Occupational Titles, which will be addressed below.

Based on this assessment, the Judge found that Pelletier was not under a disability during the timeframe relevant to the decision. (R. 379, Finding 7.)

The Decision Review Board affirmed the Judge's decision and issued a short written decision of its own. It is apparent from the decision that Pelletier objected to the fact that the Judge chose to render a new step 4 decision. However, it is not so clear that the Decision Review Board appreciated that this was related to the prior remand order. In its notice of

decision, the Decision Review Board wrote:

> Your representative contends that the Administrative Law Judge (ALJ) did not clearly indicate at the hearing that he was finding you not disabled at Step 4 of the sequential evaluation. The Board finds that the ALJ completed action on a request for hearing by issuing a written decision. See HALLEX I-2-8-1. The judge is not required to notify a claimant of his or her decision at the conclusion of the hearing.

(R. 365-66.) The Decision Review Board otherwise agreed with Pelletier that the vocational expert said she could not perform her past relevant work as generally performed, but disagreed with her contention that she could not return to her past relevant work as actually performed because the vocational expert testified that the job as actually performed involved only light exertion. (R. 366.)

**Discussion of Plaintiff's Statement of Errors**

Pelletier argues that the Judge erred in regard to his residual functional capacity finding by failing to find that she is limited to sedentary work, arguing that the regulatory description of light work suggests that her limitations are not in the light work category. (Statement of Errors at 2-3, ECF Docket Item 12.) Pelletier further argues that the Judge erred because he did not impose any additional restriction associated with her left upper extremity, which allegedly causes her pain to a lesser degree than her right upper extremity. (Id. at 3.) In support of this argument, Pelletier notes that the Judge's step 2 finding includes "bilateral" carpal tunnel syndrome and cites evidence disclosing bilateral median nerve entrapment and further evidence associated with her left-sided impairment. (Id., citing Medical Records, ECF Docket Item 9-7 & 9-8, Ex. 1F, R. 167; Ex. 3F, R. 189; Ex. 12F, R. 362, 364.) Pelletier argues that her treating source's opinion about her left-sided impairment should receive controlling weight because it is supported by objective findings and because it is consistent with the opinion of another physician who examined her for Maine Disability Determination Services. (Id. at 4, citing Ex. 9F, R. 350.)

4

Pelletier also alleges error in the Judge's finding that her treatment history is sporadic and that this serves as a basis to regard her complaints as overstated. (Id. at 5.) She cites evidence of a long treatment history and explains that a gap in treatment arose only because she lost her worker's compensation benefit. (Id.)

Pelletier also challenges the evidentiary development associated with the vocational expert's testimony. She contends that the Judge misinterpreted her past relevant work, failed to account for her limited education in relation to the educational development level of the work in question, and erroneously disregarded the applicable specific vocational profile (SVP), which is supposed to control, she contends, regardless of contrary vocational expert testimony. (Id. at 7-9.) Next, Pelletier contends that the Judge misstated the vocational expert's testimony. (Id. at 9-10.) In light of her multiple challenges to the residual functional capacity finding, including the alleged preclusion of repetitive work, Pelletier argues that the hypothetical given to the vocational expert was flawed and prevents the vocational expert's testimony from rising to the level of substantial evidence in support of the step 4 finding. (Id. at 10-11.)

Finally, Pelletier contends that the Judge predetermined that her claim would be denied and modified his analysis following a prior district court remand so as to avoid reaching step 5, where age, language, and educational limitations would have to be incorporated. Pelletier complains that the Judge had no legitimate basis to modify his prior finding that past relevant work is precluded. She says that her multiple arguments for remand demonstrate an unfair analysis of her claim and she requests that her case be remanded to another judge. (Id. at 12-14.)

The standard of review is whether substantial evidence supports the Commissioner's findings. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might

5

accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## A. The Record

Pelletier fell on the ice in December 2002, landing on her right elbow and suffering consequential injury to her right elbow, arm, and shoulder blade. A history of the present condition is found in a report offered in 2006 in the context of a medical assessment for workers' compensation insurance purposes. (Ex. 6F, R. 222-23.) Jose Rivera Tungol, M.D., examined Pelletier in January 2004 for carpal tunnel syndrome. His impression was that the examination, including an electrodiagnostic study, was "suggestive of bilateral median nerve entrapment across the carpal tunnels involving both motor and sensory fiber components." (Ex. 1F, R. 167.) A follow up by Pelletier's primary care provider, including further examination, ends with a diagnosis of bilateral carpal tunnel syndrome. (Ex. 2F, R. 168.) A November 2003 record indicates a strain in the right trapezius arising from efforts at work to compensate for carpal tunnel pain. John Naranja, Jr., M.D., performed a right carpal tunnel release procedure and a right elbow lateral epicondylar release procedure in 2004. (Ex. 3F, R. 169, 187-90, 198.) A November 2005 radiology report corroborates subjective complaints of interrelated cervical symptoms, indicating: "Loss of lordosis suggesting spasm or guarding. Degenerative disk disease at C5-C6 and C6-C7." (Ex. 4F, R. 194.) In September 2006, Carl Chasse, Pelletier's treating chiropractor, opined that Pelletier's limitations rule out repetitive tasks with her right arm and result in difficulty handling objects on a repetitive basis. (Ex. 7F, R. 231.) In addition

to some chiropractic care, Pelletier obtained a course of physical therapy (19 treatments) in 2005 following the cessation of work activity. (Ex. 8F.) Pelletier attempted to transition back to work through a temporary accommodation allowing her to perform at very light duty, which proved unsuccessful. (Ex. 6F, R. 223-24.)

Pelletier applied for disability benefits in August 2006. Maine Disability Determination Services sought a consultative examination in January 2007 from Kenneth Senter, M.D. (Ex. 9F.) Dr. Senter recounts and elaborates on the history, including Pelletier's subjective allegations. (R. 347-48.) After reviewing the records and reported on the results of his physical examination, Dr. Senter offered the following comment before his dictation abruptly cut off: "She should be able to sit, stand, and walk for one hour at one time. These activities, when prolonged, cause increase in right shoulder pain. She should be able to lift and carry 10 pounds with the left hand and 20 pounds . . ." (R. 350.) The record does not contain any other medical records review (such as a physical residual functional capacity assessment) by a consulting physician on behalf of Disability Determination Services.

At her initial hearing on September 29, 2008, Pelletier described her impairments as pain symptoms experienced in her neck and upper extremities, including her hands, elbows, and shoulders. According to her testimony, her right-sided impairment was longstanding but her left-sided impairment had developed in 2008. (Docs. Related to [Prior] Admin. Process, ECF Docket Item 9-2, R. 22-24.) Pelletier's counsel represented that Pelletier alleged disability beginning in 2002, stemming from her fall, but that her claim only went back as far as 2005 because her employer had supplied her with a workplace accommodation until sometime in 2005. (R. 22.)

According to her testimony, Pelletier remains able to do a "little bit housework" and takes Tylenol and ibuprofen as needed for pain, allegedly with little benefit. (R. 24.) Pelletier

7

professed that she has the ability to button buttons, tie shoes, shuffle cards, and knit, but denied being able to knit for a long period of time. (R. 26.) Pelletier explained that prolonged activity would make her right arm and hand go numb, burn, and swell. (R. 27.) Following this testimony, the Judge asked a vocational expert to identify Pelletier's past relevant work. This was described as "table worker," with a Dictionary of Occupational Titles code of 920.587-018. (R. 27.) The vocational expert explained that the job is classified as medium, although Pelletier's job was performed at the light exertion level (up to 20 pounds). (R. 27.) Next, the Judge turned the questioning to Peter Webber, M.D. (R. 28.) On questioning from counsel, Dr. Webber testified that the newer medical records in the file did not allow him to "establish the severity" of the impairment on the left side, but he allowed that "certainly" Pelletier's increased reliance on her left upper extremity would tend to increase the severity of her left-sided symptoms. (R. 29.) Questioning then returned to the vocational expert. The Judge asked the vocational expert to consider a hypothetical person capable of occasionally lifting 10 pounds with only occasional skills of fine manipulation and to indicate whether a job other than table worker would be possible. With that hypothetical, the expert identified a bakery worker occupation involving work at a conveyor line and an occupation of counter clerk, photo finishing. (R. 29-30.) The vocational expert testified that the bakery job would not be precluded by a marginal education and that it would require only occasional reaching and handling. (R. 31.) However, she indicated that an inability to multiply or divide would preclude the photo finishing job because it entails cash register work. (R. 32-33.) Before closing the record, the Judge permitted counsel to question Pelletier concerning her math skills, which she described as limited to adding and subtracting, with difficulty subtracting. (R. 33-34.)

In the initial decision, dated October 29, 2008, the Judge relied on the vocational expert's

8

testimony in support of a step 5 finding that Pelletier could successfully transition to other work as a bakery worker or as a counter clerk, photo finisher. (ECF Docket Item 9-10, R. 435.) The Judge found that Pelletier could not return to her past relevant work because the residual functional capacity finding he fashioned allowed for only occasional performance of fine and gross manipulations. (R. 432, Finding 5; R. 434, Finding 6.) The Judge noted that both the physician who performed the release procedures (Naranja, Ex. 3F) and the physician who evaluated Pelletier for workers' compensation insurance purposes (Kimball, Ex. 6F), opined that repetitive activity and greater than light exertion would have to be avoided with the right arm. (R. 433.) According to the Judge, Dr. Senter also agreed with this assessment. (R. 434.) This assessment is also consistent with Pelletier's testimony and the Judge did not offer any justification for rejecting the assertion that Pelletier cannot perform repetitive activity with her right arm. Indeed, he accepted the limitation in his residual functional capacity assessment, going so far as to impose a weight restriction of ten pounds. (R. 432.) When the Court later vacated and remanded the Judge's decision, it did so with a limited directive to further develop whether Pelletier's assertion of a marginal education and limited proficiency in English would prevent a transition to other work.

At the second hearing, counsel for Pelletier allowed that, despite some difficulty with the English language, Pelletier can perform "short demonstration work," provided it is not work requiring repetitive effort with the right upper extremity. (ECF Docket Item 9-9, R. 393-94, 409.) Counsel thereafter represented that Pelletier would not be able to perform occasional manipulation with the right hand. (R. 398-99.) At this point, the Judge questioned a medical expert, the same Peter Webber, M.D. who briefly testified at the first hearing, whether the record supported a finding of bilateral impairment from carpal tunnel syndrome. (R. 399.) Dr. Webber

9

described the medical records as lacking strong indication and opined that the record does not persuasively indicate a manipulative or handling restriction for the left side, as compared with the right. (R. 399-400.) No further development of the record was attempted with Dr. Webber and, consequently, he did not address any condition other than carpal tunnel syndrome.

Pelletier's testimony at the second hearing is consistent with a finding of a predominantly right-sided impairment, including testimony that heavier bags of groceries can be carried in her left hand and that her left hand is utilized in cooking. (R. 405.) Although Pelletier could hold a gallon of milk in her right hand, she cannot "bring it up." (R. 405-406.) Because Pelletier is right-hand dominant, she requires some assistance with some personal care tasks, including certain articles of clothing. (R. 404.) Repetitive motion and reaching tasks with the right arm aggravate her pain, such as peeling potatoes or carrots or folding laundry or vacuuming. (R. 411-13.) Pelletier testified that she can perform such tasks for no more than 20 minutes. (R. 413.) According to Pelletier, her right arm pain is also aggravated by prolonged standing, sitting, or, especially, walking. (R. 413-14.) Pelletier described her past work as a job of filling perfume bottles with varying operations and stations and "constant" use of the hands to place bottles or stopper them. (R. 410-11.)

Following Pelletier's testimony, the Judge questioned a vocational expert. (R. 418.) This vocational expert identified Pelletier's past relevant work of filling perfume bottles as "packaging, hand," with a Dictionary of Occupational Titles (DOT) entry at 920.587-018. (R. 419.) This DOT entry is the same entry previously offered for the "table worker" description offered by the prior vocational expert; *i.e.*, there are multiple occupational designations that fall under the umbrella of the hand packager occupation codified in the DOT. The vocational expert indicated that the job is classified as "medium, SVP 2," but represented that it is "quite often

10

performed at light." (R. 419.) The Judge permitted counsel to take over questioning in regard to "packager work performed at light." (Id.) Counsel sought to obtain the "general education requirements" for the job and was curtailed by the Judge. (R. 420.) According to the Judge, the question was beside the point because counsel had stipulated to Pelletier's ability to do short demonstration work and the job under consideration was a job Pelletier had previously performed. (Id.) Thereafter, the Judge resumed the questioning and asked the vocational expert whether a hypothetical claimant could perform the packager job if she had a residual functional capacity restricted to light work (10 pounds frequently and 20 pounds occasionally), freedom to alternate position hourly, no frequent handling with the right, dominant hand, with an ability to learn and perform short demonstration work. (R. 420-21.) To this the vocational expert responded that the person would be able to perform the job:

> "if performed at the light level. . . . The DOT describes that as medium and SVP 2, which is beyond short demonstration. But, the difference between short demonstration and the SVP 1 and 2, can be, can be extremely minimal. . . . I think that she's going to be able to perform that, as she had done it for some, off and on, as the record indicated for some 20 years."

(R. 422.) At this point, counsel resumed the questioning. This line of questioning brought out the following representation from the vocational expert:

(1) that the packager job is repetitious work;

(2) that "it would be the repetitious use of at least one hand with the assistance of the other"; and

(3) that the job as actually performed required an ability to engage in exertion at the light level and not less.

(R. 423-24.) No further factual development was attempted with the vocational expert and the hearing ended without any consideration of Pelletier's residual functional capacity and vocational profile in relation to other work.

B. Discussion

The Judge's decision to change course on his earlier step 4 finding is a rather curious development. Neither the Court's remand order nor the remand order of the Appeals Council called for reconsideration of the step 4 finding and both called for development of the vocational expert testimony respecting Pelletier's ability to transition to other work. Although the proposition was not advanced by Pelletier, there is some precedent supporting the idea that the doctrine of "law of the case" and the "rule of mandate" should be recognized in the social security context when remands are issued by district courts and the Commissioner chooses to dodge remanded issues by revisiting issues previously determined in favor of the claimant. See, e.g., Calderon v. Astrue, 683 F. Supp. 2d 273, 276-77 (E.D.N.Y. 2010); Almarez v. Astrue, No. EDCV 09-00140-MAN, 2010 U.S. Dist. Lexis 104314, 2010 WL 3894646 (E.D. Cal. Sept. 30, 2010) (Mag. J. Rec. Dec.) (collecting cases). Despite such precedent, the following recommendation does not rely on an application of these doctrines because Pelletier did not advance the argument and there does not appear to be a strict rule when it comes to the application of these doctrines. Instead, this recommendation turns on the fact that the Judge's revised step 4 finding is not supported by substantial evidence.

1.  *Residual functional capacity*

Pelletier first contends that the Judge erred in assessing a capacity for light work and by failing to include a limitation associated with the left upper extremity. (Statement of Errors at 1-4.) There is no error, per se, in the finding that Pelletier has a capacity for a subset of light work, so long as it is understood that Pelletier's right arm is limited to no more than ten pounds of exertion, only occasional use, and no repetitive activity. Although these limitations were more

clearly identified in the Judge's initial decision, there is no explanation in the subsequent decision why these limitations would no longer be present and the record does not contain substantial evidence for their disappearance, in any event. As for the left arm and the finding that carpal tunnel syndrome is a severe impairment bilaterally, it was not error to find a left-sided restriction to light work allowing for occasional weights of up to 20 pounds. An additional restriction is not compelled by the record. Dr. Webber's hearing testimony, though limited, supplies substantial evidence in support of a capacity for light exertion using the left upper extremity.

The real incongruity in the record has to do with the idea that Pelletier's past relevant work did not require bilateral use of the upper extremities or, more remarkably, the idea that repetitious handling activity could be performed with one non-dominant hand and only occasional assistance from the other hand. This is not so much an issue concerning the medical evidence of functional limitations as it is an issue concerning the characteristics of Pelletier's past relevant work and the quality of the vocational expert testimony.

2.  *Past relevant work*

Pelletier argues that the Judge erred by adopting a perspective that her past relevant work did not require bilateral use of the upper extremities. (Statement of Errors at 7-8.) At step 4 of the sequential evaluation process, the claimant bears the burden of demonstrating that his or her RFC will not allow for performance of any "past relevant work," assuming that any such work is available to consider. Past relevant work refers to substantial gainful activity performed by a claimant within the past 15 years. 20 C.F.R. § 404.1560(b). At step 4, the Commissioner compares the claimant's residual functional capacity with the claimant's past relevant work. If the claimant's residual functional capacity is compatible with his or her past relevant work, the

13

claimant is found "not disabled." 20 C.F.R. § 404.1520(a)(4)(iv). At step 4 the burden of proof rests with the claimant to demonstrate that his or her residual functional capacity does not permit the performance of past relevant work. Yuckert, 482 U.S. at 146 n.5; 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant must show that an impairment or combination of impairments prevents the performance of the "type" of work at issue, not merely a particular job. Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985).

The evidence of record demonstrates that Pelletier lacks the residual functional capacity to perform the occupation identified in section 920.587-018 of the DOT,[4] as generally performed. This job, as generally performed, requires medium exertion. The question, then, is whether Pelletier could return to her past relevant work, as actually performed, assuming only

---

[4] Section 920.587-018 of the Dictionary of Occupational Titles reads as follows:

Packages materials and products manually, performing any combination of following duties: Cleans packaging containers. Lines and pads crates and assembles cartons. Obtains and sorts product. Wraps protective material around product. Starts, stops, and regulates speed of conveyor. Inserts or pours product into containers or fills containers from spout or chute. Weighs containers and adjusts quantity. Nails, glues, or closes and seals containers. Labels containers, container tags, or products. Sorts bundles or filled containers. Packs special arrangements or selections of product. Inspects materials, products, and containers at each step of packaging process. Records information, such as weight, time, and date packaged. May stack, separate, count, pack, wrap, and weigh bakery products and be designated Bakery Worker (bakery products). May apply preservative to aircraft and spaceship parts, package parts for shipment, and be designated Wrapper and Preserver (aircraft mfg.). May be designated according to whether high-production or small-lot packaging as Fancy Packer (retail trade; wholesale tr.); Packaging-Line Attendant (any industry); specific packaging duty performed as filling, wrapping, packing, labeling, and container cleaning as Sack Sewer, Hand (any industry); kinds of equipment used or product packaged as Candle Wrapper (fabrication, nec); Carton Stapler (any industry); or whether packager performs associated duties as final assembly before packaging product as Novelty-Balloon Assembler And Packer (rubber goods). May weigh and package meat in retail store and be designated Meat Wrapper (retail trade). May be designated: Bagger (any industry); Bow Maker, Gift Wrapping (any industry); Box Maker, Cardboard (any industry); Box Wrapper (any industry); Bundler (any industry); Candy Packer (sugar & conf.); Caser, Rolled Glass (glass mfg.); Coil Strapper (steel & rel.); Container Filler (any industry); Filler (any industry); Furniture Packer (retail trade); Grader, Sausage And Wiener (meat products); Guncotton Packer (chemical); Inserter, Promotional Item (any industry); Inspector-Packager (any industry); Lidder (any industry); Mattress Packer (furniture); Packager, Meat (meat products); Packer, Dried Beef (meat products); Packer, Foamed-In-Place (any industry); Packer, Sausage And Wiener (meat products); Piece-Goods Packer (textile); Scaler, Sliced Bacon (meat products); Sponge Packer (wholesale tr.); Stamper (any industry); Table Worker (any industry); Tube Packer (rubber tire); Wrapper (any industry); Wrapper, Hand (can. & preserv.); Wrapping Remover (any industry). Workers who tend packaging machines are classified under PACKAGER, MACHINE (any industry) 920.685-078.
GOE: 06.04.38
STRENGTH: M - Medium Work - Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Light Work.
. . .

14

light exertion. The second vocational expert testified that he thought she might be able to do so by relying predominantly on her left hand. However, this supposition does not supply substantial evidence in support of such a finding in light of the following acknowledgements: (1) that the packager job is repetitious work; (2) that "it would be the repetitious use of at least one hand with the assistance of the other"; and (3) that the job as actually performed requires an ability to engage in exertion at the light level and not less. To the contrary, this testimony is substantial evidence that Pelletier <u>cannot</u> return to her past relevant work, a point that was already well established by the longitudinal record.

The vocational expert's testimony establishes that the job in question requires repetitious activity. This activity is obviously going to be performed with both upper extremities.[5] The fact that Pelletier suffers bilateral carpal tunnel syndrome is substantial evidence of that fact. Pelletier's testimony, her inability to remain in this work, and the definition of the job in the Dictionary of Occupational Titles supply further substantial evidence of this fact. Additionally, the idea expressed by the vocational expert that the work entails "repetitious use of at least one hand with the assistance of the other" is an absurd construction if it is supposed to mean that Pelletier can repetitiously package items or bottle perfume by hand-manipulating work materials while supplying only occasional assistance (*i.e.*, assistance during one-third of the work day) from one of her upper extremities. That is almost equivalent to saying that she would perform only one in three packaging operations. The absurdity of this proposition is only enhanced by

---

[5] As described by Dr. Kimball (Ex. 6F):

> She was at a workstation filling bottles of perfume, putting the pumps in the bottles of different sizes including the crimp, placing the stray attachment; she worked at other positions arranging the perfume bottles to undergo labeling. At another workstation she would lift trays of these bottles, perhaps 40 at a time, and place the packages on a pallet container. Ms. Pelletier states that this process was very light activity; nothing was heavy but it involved the use of both arms at the same time in a very repetitive manner which she has performed for many years.

(R. 223.)

15

the idea that Pelletier would be relying on her non-dominant hand. Moreover, the vocational expert testified that light exertion is required. If light exertion is required and if this level of exertion would entail even occasional use of the right upper extremity, then this would require Pelletier to exceed the ten pound limitation that applies to her right upper extremity. Pelletier has carried her burden of demonstrating an inability to perform her past relevant work as actually and as generally performed. The Judge was right the first time and erred in his decision to change course on this issue.

*3. Bias or prejudgment*

Pelletier requests that any remand order direct that further proceedings be conducted by another administrative law judge, alleging bias and prejudgment. (Statement of Errors at 12.) After a thorough review of the transcripts of both hearings I am not persuaded that the record convincingly demonstrates bias or prejudgment.

**Conclusion**

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court remand[6] for further proceedings consistent with both the foregoing discussion and the discussion offered in the prior order of remand.

---

[6] Because Pelletier has a capacity for light work, albeit a subset of light work, it is not clear that she qualifies as disabled under the Commissioner's Medical-Vocational Guidelines, despite her classification as someone approaching advanced age. Pelletier's literacy skills and ability to communicate in English will have some bearing on the issue, but those factors have yet to be addressed. See Appendix 2 to 20 C.F.R. Part 404, Subpart P, §§ §§ 202(d), 202.09, 202.10. In any event, Pelletier did not make a specific request for an order directing an award of benefits on remand, either in the Complaint or in the Statement of Errors.

NOTICE

     A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

     Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

                                         /s/ Margaret J. Kravchuk
                                         U.S. Magistrate Judge

October 4, 2011